UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**      **(In Chambers:) Plaintiff's Motion for Class Certification**
(filed 06/18/08)

## I.      INTRODUCTION & BACKGROUND

### A.      THE PROCEEDINGS

On December 20, 2005, plaintiff Heather Stern, on behalf of herself and all others similarly situated, filed the instant putative class action case against Cingular Wireless LLC ("Cingular Wireless"), erroneously sued as Cingular Wireless Corp., AT&T Wireless Services, Inc. ("AT&T Wireless"), and several Doe defendants.  On June 8, 2006, defendants Cingular Wireless and AT&T Wireless moved to compel arbitration pursuant to the arbitration clause in plaintiff's contract.  By order dated July 24, 2006, the Court held that the class action waiver clause in plaintiff's contract is unconscionable, and that the arbitration clause is therefore unenforceable.  July 24, 2006 (Docket No. 35) Order at 8.  Accordingly, the Court denied defendants' motion to compel arbitration.  On August 2, 2007, plaintiff filed her operative second amended complaint ("SAC") against defendants AT&T Mobility Corp. f/k/a Cingular Wireless Services, Inc. f/k/a AT&T Wireless, AT&T Mobility LLC f/k/a Cingular Wireless, and Does 1 through 10.  The SAC asserts claims for (1) violation of the Federal Communications Act ("FCA"), 47 U.S.C. §§ 201 et seq.; (2) breach of written contract; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; and (5) violation of Cal. Pub. Util. Code § 2890.  Plaintiff also seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|----------|----------------------|------|-----------------|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

The gravamen of plaintiff's lawsuit is two-fold. First, plaintiff challenges as unlawful a practice of "cramming," by which defendants' employees charge customers who purchase cellular telephone service at a retail store location, for "mMode/Data Service" (sometimes referred to herein as "data service") and for "ENH Discount INTL Dial" (sometimes referred to herein as "discounted international dialing service") without the customer ever having requested the services. The legal theory underlying plaintiff's motion for class certification in this regard is that defendants have created a culture at the retail store level that encourages the practice of automatically enrolling cellular telephone customers in defendants' "mMode/Data Service" and "ENH Discount INTL Dial" services. Second, plaintiff alleges that defendants' cellular telephone bills contain misleading billing descriptions. Specifically, plaintiff alleges that the "ENH DISCOUNT INTL DIAL" and "MMODE/DATA SERVICE" charges, which appear on customers' bills, are not sufficiently identified or explained, so that a reasonable consumer cannot determine whether he or she actually requested and received the services for which he or she was charged.

On January 18, 2008, plaintiff filed the instant motion for class certification. Defendants filed their opposition thereto on July 8, 2008. On July 29, 2008, plaintiff filed her reply. A hearing was held on this matter on August 11, 2008, and this Court ordered defendants to file supplemental briefing on the treatment of class action waiver provisions in the twelve (12) states addressed by plaintiff in her reply and during the hearing held herein. Defendants filed a supplemental opposition on August 18, 2008.[1] After carefully considering the parties' arguments, the Court finds and concludes as follows.

**B.     PROPOSED CLASSES**

By this motion, plaintiff seeks to certify a nationwide class as to her claims under the FCA and the Declaratory Judgment Act, which allege cramming ("the nationwide cramming class"). This nationwide cramming class is defined as follows:

---

[1] Plaintiff objects to defendants' supplemental opposition, arguing that it exceeds the scope of permitted briefing. The Court finds that defendants' supplemental opposition does not go beyond what the Court requested.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

> All residents of the United States of America who initiated wireless telephone service with Defendants at an AT&T Wireless direct retail location on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial without authorizing Defendants to bill them for the service(s).

Mot. at 2. Plaintiff further seeks certification of a subclass of California residents based on all of her claims, including her California statutory claims, which allege cramming ("the California cramming subclass"). Id. The proposed California cramming subclass includes:

> All residents of the State of California who initiated wireless telephone service with Defendants at an AT&T Wireless direct retail location on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial without authorizing Defendants to bill them for the service(s).

Additionally, plaintiff seeks certification of a nationwide class as to her claims under the FCA and Declaratory Judgment Act based on defendants' use of allegedly misleading billing descriptions ("the nationwide billing description class"). The nationwide billing description class is as follows:

> All residents of the United States of America who initiated wireless telephone service with Defendants on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial.

Id. at 2-3. Finally, as to her claims that challenge as unlawful under the FCA, the Declaratory Judgment Act, the CLRA, and the UCL, defendants' billing descriptions, plaintiff proposes a subclass of California residents ("the California billing description subclass"). This California billing description subclass consists of:

> All residents of the State of California who initiated wireless telephone service with Defendants on or after December 20, 2001, and who at any time

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

thereafter were billed and paid for mMode Data Service and/or ENH
Discount INTL Dial.

Id. at 3.

## II.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by
avoiding multiple suits, and (2) to protect rights of persons who might not be able to
present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647
(C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)).
Federal Rule of Civil Procedure 23 governs class actions.  A class action "may be
certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of
Rule 23(a) have been satisfied." General Tel. Co. of the Southwest v. Falcon, 457 U.S.
147, 161 (1982).

To certify a class action, plaintiffs must set forth prima facie facts that support the
four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4)
adequacy of representation.  In re Mego Fir. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir.
2000) (internal quotations omitted).  These requirements effectively "limit the class
claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at
155 (quoting Califano v. Yamasaki, 442 U.S. 682, 701 (1979)).

If the district court finds that the action meets the prerequisites of Rule 23(a), the
court must then consider whether the class is maintainable under Rule 23(b).  Plaintiff
seeks certification under Rule 23(b)(3), which as is the case here, governs where money
damages is the predominant form of relief sought.  A class is maintainable under Rule
23(b)(3) where "questions of law or fact common to the members of the class
*predominate* over any questions affecting only individual members," and where "a class
action is *superior* to other available methods for fair and efficient adjudication of the
controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).  "The Rule 23(b)(3)
predominance inquiry tests whether the proposed classes are sufficiently cohesive to
warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022
(9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)).  The
predominance inquiry measures the relative weight of the common to individualized

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

claims.  Id. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)).  In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action.  Id. at 1190-1993.  "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate."  citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure  § 1778 (2d. ed. 1986).

## III.   DISCUSSION

### A.      WHETHER THE CRAMMING CLASSES ARE ASCERTAINABLE

"[C]ourts have implied two prerequisites to class certification that must be satisfied prior to even addressing the requirements of Rule 23(a): (1) the class must be sufficiently defined so that the class is identifiable; and (2) the named representative must fall within the proposed class."  City of Fairview Heights v. Orbitz, Inc., 2008 WL 895650, at *2 (S.D. Ill. 2008).

#### 1.    Cramming

Defendants assert that the proposed cramming classes are not ascertainable.[2]  In this regard, defendants first argue that determining whether a customer "authorized" charges will require the Court to decide the merits of the putative class member's claim.  Second, defendants argue that plaintiff has failed to show that defendants maintain a company-wide policy that encourages cramming.  According to defendants, plaintiff

---

[2] Defendants do not appear to contend that the proposed billing description class definitions are not ascertainable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                       O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|----------|----------------------|------|-----------------|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

"offers nothing more than the supposition that, because customers did not sign contracts to purchase features and salespeople were paid on commission, there was 'a sales environment that was ripe for abuse.'" Opp'n at 9 (quoting Mot. at 5). Defendants contend that in fact, their policy prohibits employees from enrolling customers in services without authorization. Defendants maintain that because there is no evidence of a company-wide policy, whether a customer is a class member will depend on whether a particular salesperson added features to a particular customer's account in the absence of authorization to do so.

Defendants also urge that it is administratively unfeasible for the Court to ascertain whether an individual is a class member. Specifically, defendants argue that to determine whether a customer is a member of the proposed cramming classes the Court will have to decide whether the customer paid for the services at issue here. According to defendants, this will require the Court to identify and exclude customers who received the services for free, whose employers paid for the services, who contacted Customer Care and were refunded, or who received favorable long distance or data rates by signing up for the services. Defendants argue that the proposed class definitions are also overbroad because although they purport to include only customers who were crammed at a retail store, they in fact encompass customers "who purchased feature packages through *any* channel at *any* time." Opp'n at 21 (emphasis in original).

Plaintiff responds that there are objective criteria by which the Court may ascertain the cramming classes: (1) whether the putative class member initiated wireless telephone service with defendants at a retail store after December 20, 2001, and (2) whether the putative class member did not authorize defendants to bill him or her for mMode/Data Service and/or ENH Discount INTL Dial. Further, plaintiff clarifies that her proposed cramming classes are "limited to customers who became 'crammed' with mMode and/or [ENH Discount INTL Dial] at the retail store level." Reply at 21.

Further, relying on <u>Beattie v. CenturyTel, Inc.</u>, 234 F.R.D. 160 (E.D. Mich. 2006), plaintiff argues that defendants' liability can be determined on a class-wide basis, and that this Court need not resolve whether any class member has suffered damages as a result of defendants' cramming practice at this stage of the proceedings. With respect to the California cramming subclass, plaintiff argues that defendants, as the telephone

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|----------|----------------------|------|------------------|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

service providers, bear the burden of showing that plaintiff and the other absent class members authorized the disputed charges.

"An implied prerequisite to certification is that the class must be sufficiently definite." Whiteway v. FedEx Kinko's Office & Print Services., Inc., 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 14, 2006). "To be manageable the membership of the class needs to be sufficiently well defined at the outset (although all members do not need to be known) to permit meaningful notice to be given." William Schwarzer, A. Wallace Tashima, & James Wagstaffe, Federal Civil Procedure Before Trial § 10:432 (2006); Clay v. Am. Tobacco Co., 188 F.R.D. 483, 490 (S.D. Ill. 1999) ("[T]he class definition must be sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member of the proposed class."). A class is well defined if "its members can be ascertained by reference to objective criteria." Schwartz v. Upper Deck Co., 183 F.R.D. 672, 679 (S.D. Cal. 1999); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319(C.D. Cal. 1998) ("A class definition should be 'precise, objective, and presently ascertainable.") (quoting Manual for Complex Litigation § 30.14 (3d ed. 1995)).

The Court finds that the proposed cramming classes are sufficiently defined. Specifically, an individual is a class-member if, on or after December 21, 2001, he or she went to defendants' retail store and purchased cellular telephone service from defendants, and was enrolled in either one of the challenged services without ever having requested the service. It appears that defendants maintain business records from which this information may be ascertained. Further, as discussed supra, because plaintiff's legal theory is premised on the existence of a company-wide practice and policy of cramming, if plaintiff can prove that theory, the Court will not have to determine the merits of an individual's claim to ascertain whether that individual is a class member.

## 2. Cramming and Billing Description Classes

Next, defendants argue that plaintiff's class definitions exclude her as a class member since she first initiated service with AT&T Wireless prior to December 20, 2001.

In her reply, plaintiff explains that the phrase "initiated service" does not exclude individuals, like plaintiff, who became customers of defendants prior to December 20,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | | Date | August 22, 2008 |
|---|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | | |

2001. Plaintiff asserts that instead, the phrase refers to the act of entering into a contract for cellular telephone service on or after December 20, 2001, as she did.

Based on plaintiff's clarification, the Court finds that plaintiff is a member of her proposed classes.

## B.   RULE 23(a) REQUIREMENTS

### 1.   Numerosity

Rule 23(a)(1) requires the members of a proposed class to be so numerous that joinder of all of the class members would be impracticable. Fed. R. Civ. P. 23(a). However, "[i]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964) (quoting Advertising Specialty Nat. Ass'n v. FTC, 238 F.2d 108, 119 (1st Cir. 1956)). Generally, a class with more than forty class members satisfies the numerosity requirement. Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir.1995) (citing 1 Newberg On Class Actions § 3.05 ((2d ed. 1985)).

### a.   Cramming Classes

Defendants argue that the numerosity prerequisite is not satisfied because plaintiff's experience was an isolated incident.

However, defendants' argument ignores that this lawsuit is predicated on allegations of a company-wide practice of cramming. In this regard, plaintiff has set forth evidence of approximately 137 instances in which a customer has complained that he or she was charged for the data and/or international dialing services without ever having requested the services. Further, defendants' own studies show that more than forty customers cancelled their mMode/Data Service plans on the grounds that defendants' sales representative sold them the service without their knowledge. See Declaration of Kiley L. Grombacher in Supp. of Mot. ("Grombacher Decl."), Ex. G ("mMode Churner Wave 2") at 1884. The Court finds that in light of this evidence, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

the allegations of a company-wide practice or policy, plaintiff has satisfied the numerosity requirement.

### b.    Billing Description Classes

Additionally, plaintiff has set forth evidence showing that as of October 31, 2004, hundreds of thousands of defendants' customers were billed for mMode/Data Service and for ENH Discount INTL Dial.  According to plaintiff, over one hundred thousand of those customers had billing addresses within California.  This evidence certainly satisfies the numerosity requirement as to the billing description classes.

### 2.    Commonality

Commonality requires "questions of law or fact common to the class."  Rule 23(a)(2).  The commonality requirement is generally construed liberally; the existence of only a few common legal and factual issues may satisfy the requirement.  Jordan v. County of Los Angeles, 669 F.2d 1311, 1320 (9th Cir. 1982).

Defendants do not address the commonality requirement under Rule 23(a)(2). Therefore, it does not appear that defendants dispute that this requirement is met.  In any event, the Court finds that the class members' cramming claims share common legal issues.  These legal issues include the question of whether defendants placed unauthorized charges on customers' cellular telephone bills.  Further, the Court finds that the class members' cramming claims derive from a common set of salient facts.  All class members will have to prove that, on or after December 20, 2001, they went to a retail store, that they thereupon entered into a service contract with defendants, that an employee of defendants signed them up for mMode Data Service and/or ENH Discount INTL Dial, and that the employee did so without obtaining their consent.  The foregoing can be proven on a class-wide basis if plaintiff can prove that defendants' employees crammed customers as alleged, as a matter of course.

Similarly, as to plaintiff's billing description classes, the Court finds that the class members' claims share common legal issues.  Specifically, all class members' claims are predicated on the allegation that defendants' bills contained misleading billing descriptions.  Further, the Court finds that the class members' claims derive from a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|----------|----------------------|------|-----------------|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

common core of salient facts. These facts include the question of whether the customers' cellular telephone bill contained the descriptions at issue.

Based on the foregoing, the Court concludes that the commonality requirement of Rule 23(a)(2) is met. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

**3. Typicality**

Typicality requires a determination of whether the named plaintiff's claims are typical of those of the proposed class they seek to represent. Rule 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020; Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985) ("A plaintiff's claim meets this requirement if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.").

Defendants appear to argue that plaintiff's claims are not typical because although plaintiff "purchased features in an oral transaction at a retail store and failed to read her bills[,] other potential class members purchased features in different ways and presumably chose to read the information given to them." Opp'n 23.

The Court finds these speculative arguments to be unavailing. Notwithstanding any asserted differences among class members, plaintiff's claims are based on an alleged common course of conduct by defendants to (1) overcharge their customers at the retail store level by imposing unauthorized service charges on customers' bills, and (2) place misleading billing descriptions on customers' monthly billing statements. Therefore, plaintiff's claims arise from the "same event or course of conduct" as those of the various absent class members, as required under Rule 23(a)(3), and are typical of the claims of the proposed class. Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985); Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992).

**4. Adequacy of Representation**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

The adequacy of representation requirement of Rule 23(a)(4) involves a two-part inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

Defendants object that plaintiff is not an adequate class representative. According to defendants, plaintiff cannot represent the class because (1) the conduct that she claims harmed her benefitted some class members and (2) her credibility is open to question. Defendants contend that plaintiff's lack of credibility disqualifies her because "[plaintiff's] case is a moving target": plaintiff is no longer seeking certification of her claims relating to defendants' text messaging service. Opp'n at 23. Further, defendants challenge plaintiff's credibility on the grounds that plaintiff claims not to remember receiving discounts and promotions on her account, and that plaintiff admitted during deposition that she understood what was meant by the mMode/ Data Service and the ENH Discount INTL Dial descriptions.

The Court is unpersuaded by defendants' arguments. Clearly, no customer can be benefitted by being charged for services that he or she did not request, or by the placement of misleading billing descriptions on his or her bill. Indeed, plaintiff, like all class members, has an interest in only being charged for services that she ordered, and in receiving bills with billing descriptions that she can understand. Therefore, the Court finds that there are no conflicts between the positions of the named plaintiff and the proposed classes. The Court further finds that the allegations attacking plaintiff's credibility are not a sufficient basis upon which to conclude that plaintiff's interests would be in conflict with those of the class. Finally, defendants do not appear to dispute that plaintiff's counsel are able to prosecute this action vigorously. Accordingly, the Court finds that the adequacy requirement of Rule 23(a)(4) is satisfied.

## C.    RULE 23(b)(3) REQUIREMENTS

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotations omitted). As noted above, Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|----------|----------------------|------|-----------------|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

methods available for adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  The latter
requirement requires consideration of the difficulties likely to be encountered in the
management of this litigation as a class action, including, especially, whether and how
the case may be tried.  In making these determinations, the Court does not decide the
merits of any claims or defenses, or whether the plaintiffs are likely to prevail on their
claims.  Rather, the Court must determine whether plaintiffs have shown that there are
plausible class-wide methods of proof available to prove their claims.

### 1.    Predominance and Commonality

"Implicit in the satisfaction of the predominance test is the notion that the
adjudication of common issues will help achieve judicial economy."  See Valentino, 97
F.3d at 1234.  Thus, the Court must determine whether common issues constitute such a
significant aspect of the action that "there is a clear justification for handling the dispute
on a representative rather than on an individual basis."  7A Charles Alan Wright, Arthur
R. Miller, and Mary Kay Kane, Federal Practice & Procedure § 1778 (3d ed. 2005).  For
the proponent to satisfy the predominance inquiry, it is not enough to establish that
common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality
requirement -- the predominance inquiry under Rule 23(b) is more rigorous.  Amchem
Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997).  The predominance question "tests
whether proposed classes are sufficiently cohesive to warrant adjudication by
representation."  Id. at 623.  The Court, therefore, must balance concerns regarding the
litigation of issues common to the class as a whole with questions affecting individual
class members.  In re Northern District of California, Dalkon Shield IUD Products
Liability Litigation, 693 F.2d 847, 856 (9th Cir. 1982).

### a.    Cramming Classes

Defendants argue that plaintiff's cramming claims cannot be proven on a class-
wide basis.  Specifically, defendants argue that this case is predicated on oral
communications between a customer and a sales representative at a retail store.
Defendants contend that there is no evidence to suggest there was any uniformity among
the communications, or that the communications were conducted pursuant to a
standardized company policy.  Defendants argue that the presence of a commission based
compensation system does not, by itself, create an incentive to violate company policy.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|----------|----------------------|------|-----------------|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

Defendants claim that although plaintiff identifies 137 customer complaints (out of approximately 18.6 million customers nationwide), the customers' varying experiences do not demonstrate a policy of cramming. Defendants further claim that plaintiff has misrepresented the findings of their studies, by stating that forty percent of mMode/Data Service subscribers did not request the feature, to attempt to create commonality. According to defendants, only 9.5 percent of total churners,[3] not forty percent, state that they did not know they were being sold the mMode/Data Service feature. Defendants argue that, in fact, their "studies show that trial would require individual inquiry of all mMode subscribers to determine what they understood and did and why they kept or cancelled mMode." Opp'n at 17.

Defendants further argue that the presence of affirmative defenses unique to particular class members renders this case inappropriate for representative adjudication. In this regard, defendants contend that there are variations in applicable state law on the enforceability of the contractual arbitration clause set forth in the booklet entitled, "Important Information and Service Agreement" ("Service Agreement"), which sets forth the terms and conditions of a customer's wireless service. Defendants also argue that the application of other affirmative defenses, such as the voluntary payment doctrine, waiver, setoff, statute of limitations, and failure to comply with the contract requirements, will require an individual analysis as to each class member.

Defendants' cited cases demonstrate that courts are hesitant to certify classes where individualized inquiries are necessary to determine liability.[4] However, as the court in

---

[3] A "[c]hurner is a customer who had an mMode plan and chose to leave that mMode plan and canceled the service." Grombacher Decl., Ex. C (Deposition of Robert J. O'Donnell) at 46:13-15.

[4] In In re Paxil Litigation, F.R.D. 539 (C.D. Cal. 2003), the plaintiff sought to certify a class of persons who suffered "severe" withdrawal symptoms after discontinuing use of the prescription drug Paxil. Id. at 541-42. The Court found that the term "severe," was not only inherently subjective, but it was not possible to ascertain whether particular Paxil users belonged in the class until "the conclusion of all proceedings." Id. at 545-46. In Rodriguez v. Gates, 2002 WL 1162675 (C.D. Cal. 2002), the plaintiff sought to certify a class of all persons "whose rights . . . were violated by the Rampart Division CRASH

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                 O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

Kurihara v. Best Buy Co., Inc., 2007 WL 2501698 (N.D. Cal. 2007) observed, "courts' discomfort with individualized liability issues is assuaged in large part where the plaintiff points to a specific company-wide policy or practice that allegedly gives rise to consistent liability." Id. at *10 (citing cases); see e.g., Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1183 (9th Cir. 2007) (finding that district court did not abuse its discretion in certifying a class where there was "substantial evidence of Wal-Mart's centralized company culture and policies," including common pay and promotion policies, "Wal-Mart's decision to permit managers to utilize subjectivity in interpreting those policies," and "statistical evidence demonstrating a pattern of discriminatory pay and promotions for female employees").

Presumably because she recognizes class-wide proof of liability to be a potential problem, plaintiff's motion for class certification is predicated on a company-wide practice or policy:

> The combination of a sales channel in which no documentation was required
> to reflect the customer's agreement to purchase the mMode feature, coupled
> with a sales program under which sales representatives faced termination if

---

Unit Officers from 1990 through the present." Id. at * 2. The court declined to certify a class, finding, inter alia, that there "is no objective way to determine who is a member of the class proposed by [the plaintiff] without first deciding the merits of each putative class member's claim." Id. at *9; compare Hilao v. Estate of Marcos, 103 F.3d 767 (9th Cir. 1996) (involving class of civilian citizens of the Republic of Philippines who were tortured, summarily executed, or disappeared while in custody of military or paramilitary groups). In Maddock v. KB Homes, Inc., 248 F.R.D. 229 (C.D. Cal. 2007), this Court declined to certify a class where the plaintiff failed to offer evidence "that [the] defendant imposed standardized operational procedures, or that sales agents received uniform training." Id. at 245. In Frosini v. Bridgestone Firestone North Am. Tire, LLC, 2007 WL 2781656 (C.D. Cal. 2007), the plaintiff sought to certify a class of persons who had purchased defective tires from the defendant. This Court denied class certification, finding that, inter alia, common questions of law and fact did not predominate because the plaintiffs would have to submit individualized proof to demonstrate that a given tire acquired by a class member was defective. Id. at *15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

their monthly sales quotas were not met, created a sales environment that
was ripe for abuse at the retail store level

Mot. at 5. In this regard, plaintiff has proffered evidence showing that defendants set
monthly quotas requiring sales representatives to enroll a certain percentage of customers
each month in the mMode/Data Service and/or the ENH Discount INTL Dial service, and
that defendants rewarded their sales representatives by paying them a commission.[5]
However, it does not appear that defendants' sales representatives used a standardized
script or forms when making sales at retail stores. Absent this type of uniformity in
practice, it is not clear how plaintiff can prove her cramming claims on a class-wide
basis.

Plaintiff further purports to show commonality through the use of anecdotal
evidence and statistics. Specifically, plaintiff has set forth evidence of the AT&T
Wireless Executive Response Center's ("WERC") complaint log for the time period of
January 2002 through December 2004. WERC's complaint log documents customer
complaints. The complaint log reveals that customers variously charge that they received
services they did not want, and therefore demanded to be credited for past monthly
service charges, or that a retail sales representative added features to the customer's
account without permission.[6] The customer complaints, however, do not always state
how the unauthorized feature was added to the customer's account, i.e., whether the
customer was crammed by a sales representative at a retail store. Plaintiff also relies on
studies conducted by defendants in 2003 and 2004, which pertained to mMode/Data
Service "churners," to argue that sales representatives regularly crammed customers at
the retail store level. However, these studies, which relate only to mMode/Data Service,
do not, by themselves, support a finding of commonality.

---

[5] Defendants claim that they maintain a policy against cramming. Defendants have not,
however, set forth any written evidence of this policy. Defendants also contend that they
discouraged cramming by reversing a sales representative's commission if a subscriber
cancelled a feature. Declaration of Fred Devereux in Supp. of Opp'n ¶ 5.

[6] In response, defendants generally issued the customer a credit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

In response to the Court's questions at oral argument as to what evidence pertaining to the purchase of cellular telephones at retail stores would establish a class-wide method of proving cramming, counsel for plaintiff argued that the service contract provides a class-wide method of proof because by its terms it supercedes any oral representations made to class members. The difficulty with this argument is that the service agreement incorporates, but does not specify, the rate plans selected by customers. Thus, there is presently no evidence from which it can be determined on a class-wide basis what services were selected and what services were provided. While such evidence may be available, it has yet to be provided. Accordingly, the Court finds that plaintiff has at this juncture failed to meet her burden to establish a plausible class-wide method to prove cramming.

**b.     Billing Description Classes**

Defendants argue that the billing description class claims require individual proof of causation, injury, and damages.

**i.     Nationwide Class**

As to plaintiff's claims under the FCA and the Declaratory Judgment Act, this Court has previously explained, in its prior order denying defendants' motion for summary judgment, that liability is established under section 201(b) of the FCA by showing that challenged billing descriptions were objectively misleading. Whether the billing descriptions at issue here are misleading can be determined on a class-wide basis since defendants used the same allegedly misleading billing descriptions in all class members' bills.

In their opposition, defendants argued that if a class is certified, and they seek to compel arbitration, predominance is defeated. In response, plaintiff limited her request for certification of the nationwide billing class to twelve (12) states in which plaintiff contends class action waiver provisions in contracts of adhesion are clearly unenforceable.

The Court therefore turns to each state's treatment of class action waiver provisions. As to Arizona, Illinois, Massachusetts, Michigan, Missouri, New Jersey, New

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

Mexico, North Carolina, Oregon, and Wisconsin, the law on class action waiver provisions is either unclear or requires a case-by-case analysis that this Court declines to undertake.  See Lozano v. AT&T Wireless Services, Inc., 504 F.3d 718, 728 (9th Cir. 2007) ("We reject the notion that the district court was obligated to conduct a comprehensive survey of every state's law on this issue").  The Court therefore finds that as to these states, predominance is defeated.  Accordingly, the Court declines to certify a class of residents in these states.

However, Washington law clearly treats class action waiver provisions as unconscionable.  The Washington Supreme Court held that the 2003 version of Cingular Wireless' class action waiver clause was "an unconscionable violation of this State's policy to 'protect the public and foster fair and honest competition, . . . because it drastically forestalls attempts to vindicate consumer rights."  Scott v. Cingular Wireless, 161 P.3d 1000, 1006 (Wash. 2007).  The court reasoned that "shifting the cost of arbitration to Cingular [did] not seem likely to make it worth the time, energy, and stress to pursue such individually small claims."  Id. at 1007.  The court further explained that "[w]here many customers of the same company have the same or similar complaint and each is damaged a small amount, class action litigation or arbitration is the only practical remedy available . . . [u]nder such circumstances, the class action waiver is substantively unconscionable."  Id. at 1009.  The Ninth Circuit applied Scott to a similar arbitration clause that barred class actions in both litigation and arbitration, and found that clause unenforceable.  Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1218 (9th Cir. 2008) ("The Washington State Supreme Court's holding in Scott requires us to determine that [the] class action waiver is substantively unconscionable, and unenforceable, under Washington law").

Defendants nonetheless contend that the current version of the class action waiver clause contains "unprecedented incentives designed to encourage customers to pursue individual arbitration . . . to respond to the concerns . . . raised in Scott."  Supp. Opp'n at 17.  However, the current version of the class action waiver only differs from the 2003 version in that it provides that "if the arbitrator awards the customer relief that is greater than [AT&T Wireless'] last settlement offer, the customer is to receive the greater of the amount of the award, or $5,000, or an amount equal to the jurisdictional maximum of the customer's local small claims court."  Id. at 12.  The likelihood that this new, limited provision would make it worthwhile for customers to pursue individual claims is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA     O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

altogether improbable. As such, class action litigation or arbitration remains the only practical remedy available. The Court finds that the class action waiver provision would be unconscionable under Washington law, and therefore unenforceable.

Because only Washington law clearly invalidates class action waiver provisions as unconscionable, the Court certifies a national class as to residents of Washington only.

## ii.    California Subclass

A member of a CLRA class must show that he or she suffered damage by relying on the defendants' misrepresentation or omission. Wilens v. TD Waterhouse Group, Inc., 120 Cal. App. 4th 746, 755 (2003). Where misrepresentations are sufficiently material, "an inference of reliance may arise as to the entire class." Id. at 814; see also Mass. Mut. Life Ins. Co. v. Superior Court, 97 Cal. App. 4th 1282, 1286 (2002) (stating that class wide inference of reliance may be based on a material misrepresentation in order to certify CLRA class); Occidental Land, Inc. v. Superior Court, 18 Cal.3d 355, 363 (1976); see e.g., Gonzalez v. Proctor and Gamble Co., 247 F.R.D. 616 (S.D. Cal. 2007) (denying class certification because although an inference of reliance is permitted a "single, material misrepresentation was directly made to each class member," the "[p]laintiff's allegations that a class of consumers, who may have seen all, some, or none of the advertisements that form the basis of [p]laintiff's suit, does not allow an inference of common reliance or liability").

Here, the alleged misrepresentation is in the nature of a concealment: the billing descriptions are alleged to conceal the services underlying the charges. Plainly, a charge on a customer's bill is material to the customer. Because the concealment challenged herein is material, reliance may be inferred as to the class. See e.g., Chamberlan v. Ford Motor Co., 369 F. Supp. 2d 1138, 1146 (N.D. Cal. 2005) (denying summary judgment because there was a triable issue of fact regarding the materiality of the alleged omission).

It is not clear whether a member of a UCL class must prove causation or reliance. This Court has previously noted that this precise issue is currently pending before the California Supreme Court. See In re Tobacco II Cases, 142 Cal. App. 4th 891 (2006), rev. granted, 146 P.3d 1250; Pfizer, Inc. v. Superior Court, 141 Cal. App. 4th 290 (2006),

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

rev. granted, 146 P.3d 1250 (2006). Because it is not clear that absent class members must prove either causation or reliance, the Court finds that certification of plaintiff's UCL class is appropriate at this time.

In sum, the Court finds that, as to plaintiff's California billing description subclass, plaintiff has satisfied the commonality requirement of Rule 23(a)(2) as well as the predominance requirement of Rule 23(b)(3).

## 2. Superiority

In addition to a predominance of common questions, the proponent of class certification must also demonstrate that the class action is superior to other methods of adjudicating the controversy. See Valentino, 97 F.3d at 1235 (explaining that the party seeking certification needs to make a "showing [as to] why the class mechanism is superior to alternative methods of adjudication"). A class action may be superior where "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino, 97 F.3d at 1234. Rule 23(b)(3) provides the following non-exhaustive list of four factors to consider in this assessment:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
> (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

The greater the number of individual issues to be litigated, the more difficult it will be for the court to manage the class action. See e.g., Dalkon Shield, 693 F.2d at 856. Thus, a class action is not appropriate where an individual class member would be compelled to try "numerous and substantial issues to establish his or her right to recover individually, after liability to the class is established." Schwarzer et al., supra, at §

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

○

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

10:361.  On the other hand, the fact that individual members of the class seek separate damages is not fatal to class treatment.  Id.

### a.      Cramming Classes

Because the Court concludes herein that plaintiff has not set forth a plausible class-wide method of proving her cramming claims, the Court finds that a class action is a not superior means of litigating those claims.

### b.      Billing Description Classes

However, the Court finds that a class action is a superior means of adjudicating the claims charging as unlawful defendants' billing descriptions, at least in Washington and California.  First, since a small amount of money is at issue for each class member, class members are likely to lack the financial incentive to litigate the suit individually – the cost of litigation will outweigh their potential recovery.  Second, it does not appear that the members of the billing description classes have commenced any other litigation concerning the controversy alleged herein.  Third, there is no reason to believe that this is an undesirable forum to litigate these claims.  Finally, notwithstanding defendants' arguments to the contrary, the Court finds that this class action will be manageable.  The issue of whether the challenged billing descriptions are misleading predominates, and any issues of management can be addressed by procedural mechanisms.

In sum, the Court finds that plaintiff has satisfied both the predominance and superiority prongs of Rule 23(b)(3).  A Washington billing description class and a California billing description subclass may therefore be certified.

## IV.    CONCLUSION

In accordance with the foregoing, the Court DENIES plaintiff's motion for class certification as it pertains to claims challenging the placement of unauthorized charges on customers' bills.  The Court DENIES plaintiff's motion for class certification to the extent that it seeks certification of any class outside of the states of Washington and California on her claims alleging that defendants placed misleading billing descriptions on customers' cellular telephone bills.  However, the Court provisionally GRANTS

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA          O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | August 22, 2008 |
|---|---|---|---|
| Title | Heather Stern, on behalf of herself and all others similarly situated v. AT&T Mobility Corp., et al. | | |

plaintiff's motion for class certification to the extent that it seeks to certify a class of residents in Washington and California on her claims alleging that defendants placed misleading billing descriptions on customers' cellular telephone.  The Washington class is as follows

> All residents of the State of Washington who initiated service, whether as new customers or as preexisting customers, with Cingular Wireless LLC or AT&T Wireless Services, Inc. for wireless telephone service on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial.

The California class is as follows

> All residents of the State of California who initiated service, whether as new customers or as preexisting customers, with Cingular Wireless LLC or AT&T Wireless Services, Inc. for wireless telephone service on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |