UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kiley Grombacher<br>J. Paul Cignac | Shelley Hall |

**Proceedings:** **PLAINTIFF'S RENEWED MOTION FOR CERTIFICATION OF THE CRAMMING CLASSES** (filed 1/15/09)

## I.     INTRODUCTION

On December 20, 2005, plaintiff Heather Stern, on behalf of herself and all others similarly situated, filed the instant class action case against Cingular Wireless LLC ("Cingular Wireless"), erroneously sued as Cingular Wireless Corp., AT&T Wireless Services, Inc. ("AT&T Wireless"), and several Doe defendants. On June 8, 2006, defendants Cingular Wireless and AT&T Wireless moved to compel arbitration pursuant to the arbitration clause in plaintiff's contract. By order dated July 24, 2006, the Court held that the class action waiver clause in plaintiff's contract is unconscionable, and that the arbitration clause is therefore unenforceable. July 24, 2006 Order at 8. Accordingly, the Court denied defendants' motion to compel arbitration. On August 2, 2007, plaintiff filed the operative second amended complaint ("SAC") against defendants AT&T Mobility Corp. f/k/a Cingular Wireless Services, Inc. f/k/a AT&T Wireless, AT&T Mobility LLC f/k/a Cingular Wireless, and Does 1 through 10. The SAC asserts claims for (1) violation of the Federal Communications Act ("FCA"), 47 U.S.C. §§ 201 et seq.; (2) breach of written contract; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; and (5) violation of Cal. Pub. Util. Code § 2890. Plaintiff also seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq.

On June 17, 2008, the Court denied defendants' motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

On August 22, 2008, the Court granted in part and denied in part plaintiff's motion for class certification. The Court denied plaintiff's motion for class certification as to her claims challenging the placement of unauthorized charges on customers' bills, or "cramming." Class Certification Order at 21. With respect to the claims alleging that defendants placed misleading billing descriptions on customers' bills, the Court granted plaintiff's motion to the extent that it sought to certify a class of residents in Washington and California. Id.

On November 17, 2008, the Court amended its class certification order and certified the Class as follows

> All residents of the State of Washington and the State of California who initiated service, whether as new customers or as preexisting customers, with Cingular Wireless LLC or AT&T Wireless Services, Inc. for wireless telephone service on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial.

The Class was certified as to plaintiff's federal law claims pursuant to the Federal Communications Act and the Declaratory Judgment Act. The Court also certified a California Subclass as follows

> All residents of the State of California who initiated service, whether as new customers or as preexisting customers, with Cingular Wireless LLC or AT&T Wireless Services, Inc. for wireless telephone service on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial.

The California Subclass was certified as to plaintiff's claims under the Federal Communications Act, the Declaratory Judgment Act, California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

On January 15, 2009, plaintiff filed the instant "renewed motion for certification of the cramming classes." On January 30, 3009, defendants filed their opposition. On

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

February 17, 2009, plaintiff filed her reply. A hearing was held on February 23, 2009. After carefully considering the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff challenges as unlawful a practice of "cramming," by which defendants' employees charge customers who purchase cellular telephone service at a retail store location, for mMode/Data Service ("mMode") and for ENH Discount INTL Dial ("EDID") without the customer ever having requested the services. The legal theory underlying plaintiff's motion for class certification in this regard is that defendants have created a culture at the retail store level that encourages the practice of automatically enrolling cellular telephone customers in defendants' mMode and EDID services.

In its August 22, 2008 Class Certification Order, the Court denied certification as to plaintiff's "cramming" claims because plaintiff had failed to establish a plausible class-wide method to prove cramming. The Court stated

> In response to the Court's questions at oral argument as to what evidence pertaining to the purchase of cellular telephones at retail stores would establish a class-wide method of proving cramming, counsel for plaintiff argued that the service contract provides a class-wide method of proof because by its terms it supercedes any oral representations made to class members. The difficulty with this argument is that the service agreement incorporates, but does not specify, the rate plans selected by customers. Thus, there is presently no evidence from which it can be determined on a class-wide basis what services were selected and what services were provided. While such evidence may be available, it has yet to be provided. Accordingly, the Court finds that plaintiff has at this juncture failed to meet her burden to establish a plausible class-wide method to prove cramming.

Class Certification Order at 16.

Plaintiff argues that she has received documents regarding defendants' rate plan brochures and deposed a witness, Sean Perez, who testified on defendants' behalf

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

regarding the brochures. Mot. at 3. Plaintiff contends that she now has sufficient evidence to establish a plausible class-wide method to prove cramming. Id. Plaintiff asks that the Court certify a "Cramming Class" as follows

> "All residents of the State of Washington and the State of California who initiated service, whether as new customers or as preexisting customers, with Cingular Wireless LLC or AT&T Wireless Services, Inc., for wireless telephone service at an AT&T Wireless or Cingular Wireless direct retail location on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial without authorizing Cingular Wireless LLC or AT&T Wireless Services, Inc. to bill them for the service(s)"

Mot. at 2. Plaintiff further asks that the Court certify a "California Cramming Subclass" as follows

> All residents of the State of California who initiated service, whether as new customers or as preexisting customers, with Cingular Wireless LLC or AT&T Wireless Services, Inc., for wireless telephone service at an AT&T Wireless or Cingular Wireless direct retail location on or after December 20, 2001, and who at any time thereafter were billed and paid for mMode Data Service and/or ENH Discount INTL Dial without authorizing Cingular Wireless LLC or AT&T Wireless Services, Inc. to bill them for the service(s)

Id. at 2-3.

### A.   mMode

Plaintiff argues that mMode is a feature that enables defendants' GSM customers to access the internet from their cellular telephones. Mot. at 6 (citing O'Donnell Dep. at 22). Plaintiff further argues that mMode was sold as an "add-on feature" at retail stores to customers by sales representatives who were supposed to do an in-store demonstration of the mMode feature for customers. Id. (citing O'Donnell Dep. at 39). Plaintiff contends that no written records were generated or maintained by defendants to reflect

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

their customers' agreement to purchase the mMode feature.  Id. (citing O'Donnell Dep. at 36).

Plaintiff further contends that defendants developed an "aggressive" business plan to sell the mMode feature with the goal of bringing in 650,00 mMode subscribers by the end of 2002 and 1.3 million subscribers by the end of 2003.  Id. (citing Grombacher Decl., Ex. 1 at 3606 and Ex. 2 at 4214).  To achieve these goals, plaintiff alleges that defendants (1) required retail communications specialists[1] to meet a 45% attach rate[2] for mMode on all GSM activations; (2) paid significant commissions to sales representatives on sales of the mMode feature; (3) levied severe penalties on their sales representatives who failed to meet their monthly quotas – including termination.  Id. at 6-7.

### B.    ENH Discount INTL Dial

Plaintiff argues that EDID, which stands for "Enhanced Discounted International Dialing," is a feature that is meant to enable defendants' customers to "receive some of the best international long-distance rates in the industry to the most frequently dialed countries."  Mot. at 8.  Plaintiff further argues that EDID was sold as an "add-on feature" to customers at retail stores for both GSM and TDMA wireless telephones.  Id.  Plaintiff contends that defendants provided their sales representatives strong incentives to sell EDID by paying them a commission that was double the monthly charge.  Id.  Plaintiff further contends that defendants have no records reflecting class members' agreement to purchase EDID.  Id. at 11.

### C.    Plaintiff's Newly Proffered Evidence

Plaintiff asserts that none of the sales information provided by defendants in

---

[1] Plaintiff alleges that sales representatives were known as "retail communication specialists" within the retail sales hierarchy established by defendants.  Mot. at 6.

[2] Plaintiff alleges that "attach rate" is used by defendants to measure the relative frequency that a sale of a feature is made in comparison to the number of sales opportunities.  Mot. at 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

response to document requests reflect any agreement by customers to purchase the mMode and/or EDID features. Mot. at 11. Plaintiff further asserts that defendants corporate designee, Sean Perez, testified at his deposition that he was not aware of any "features and sales brochures" that indicated whether a customer had in fact agreed to have the mMode and/or EDID feature placed on his/her account. Id. at 13.

Defendants respond that it had a strict policy against "cramming" and that subscribers did not sign contracts to add features such as mMode and EDID because they purchased these features on a month-to-month basis and could cancel at any time. Opp'n at 4. Defendants argue that subscribers orally authorized purchases of these features. Id.

## III. LEGAL STANDARD

### A. Local Rule 7-17

Local Rule 7-17 provides for "Resubmission of Motions Previously Acted Upon"

> If any motion, application or petition has been made to any judge of this Court and has been denied in whole or in part or has been granted conditionally or on terms, any subsequent motion for the same relief in whole or in part, whether upon the same or any allegedly different state of facts, shall be presented to the same judge whenever possible. If presented to a different judge, it shall be the duty of the moving party to file and serve a declaration setting forth the material facts and circumstances as to each prior motion, including the date and judge involved in the prior motion, the ruling, decision, or order made, and the new or different facts or circumstances claimed to warrant relief and why such facts or circumstances were not shown to the judge who ruled on the motion. Any failure to comply with the foregoing requirements shall be the basis for setting aside any order made on such subsequent motion, either sua sponte or on motion or application, and the offending party or attorney may be subject to the sanctions provided by L.R. 83-7.

L.R. 7-17. As a general rule, parties cannot resubmit motions pursuant to Local Rule 7-17 on identical facts and law upon which a court has already ruled. Williams v. UMG

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

Recordings, Inc., 281 F. Supp. 2d 1177, 1186 (C.D. Cal. 2003). Although class certification orders are generally provisional, ordinarily they will not be reconsidered absent some change in the facts. Slaven v. BP America, Inc., 190 F.R.D. 649, 651-52 (C.D. Cal. 2000). Furthermore, the "law of the case" doctrine precludes courts from reconsidering an issue that has already been decided unless "substantially different" evidence exists. See Thomas v. Bible, 983 F.2d 152, 155 (9th Cir. 1993).[3]

### B. Class Certification

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions. A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth prima facie facts that support the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4)

---

[3] While this motion is brought pursuant to L.R. 7-17, it also appears to be a motion for reconsideration pursuant to L.R. 7-18, which provides that

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise or reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7-18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

adequacy of representation. In re Mego Fir. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000) (internal quotations omitted). These requirements effectively "limit the class claims to those fairly encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442 U.S. 682, 701 (1979)).

If the district court finds that the action meets the prerequisites of Rule 23(a), the court must then consider whether the class is maintainable under Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), which as is the case here, governs where money damages is the predominant form of relief sought. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members," and where "a class action is *superior* to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) *(*citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common to individualized claims. Id. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) *(*citing Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Id. at 1190-1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 (2d. ed. 1986).

## III.  DISCUSSION

### A.  Rule 23(b)(3) Requirements

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

In its August 22, 2008 order, the Court denied plaintiff's motion for class certification as to her "cramming" claims because they failed to meet the requirements of Rule 23(b)(3). Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022 (internal quotations omitted). Rule 23(b)(3) calls for two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). The latter requirement requires consideration of the difficulties likely to be encountered in the management of this litigation as a class action, including, especially, whether and how the case may be tried. In making these determinations, the Court does not decide the merits of any claims or defenses, or whether the plaintiffs are likely to prevail on their claims. Rather, the Court must determine whether plaintiffs have shown that there are plausible class-wide methods of proof available to prove their claims.

### 1.      Predominance and Commonality

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." See Valentino, 97 F.3d at 1234. Thus, the Court must determine whether common issues constitute such a significant aspect of the action that "there is a clear justification for handling the dispute on a representative rather than on an individual basis." 7A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice & Procedure § 1778 (3d ed. 2005). For the proponent to satisfy the predominance inquiry, it is not enough to establish that common questions of law or fact exist, as it is under Rule 23(a)(2)'s commonality requirement -- the predominance inquiry under Rule 23(b) is more rigorous. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997). The predominance question "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Id. at 623. The Court, therefore, must balance concerns regarding the litigation of issues common to the class as a whole with questions affecting individual class members. In re Northern District of California, Dalkon Shield IUD Products Liability Litigation, 693 F.2d 847, 856 (9th Cir. 1982).

Plaintiff argues that defendants claim to have provided the mMode and EDID features to their customers based on "oral authorizations." Mot. at 22. Plaintiff contends

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

that defendants cannot rely on "oral authorizations" because the service contract supercedes any oral representations made to class members. Id. at 23. Plaintiff argues that unless the authorization for the inclusion of mMode or EDID service is incorporated into the service contract, customers are not legally bound to pay for the service. Id. Plaintiff contends that uniformity and predominance are established because defendants failed to obtain written authorization and cannot prove authorization of any kind. Id. Plaintiff argues that defendants' corporate designee, Sean Perez, stated that there are no documents signed or initialed by customers indicating that they agreed to have the mMode and/or EDID features placed on their account. Id. Plaintiff contends that defendants' failure to maintain records should be held against defendants and not plaintiff. Id. at 23-24 (citing Smith v. Dearborn County Ind., 244 F.R.D. 512, 519 (S.D. Ind. 2007); Aguiar v. Cintas Corp. No. 2, 144 Cal. App. 4th 121, 134 (2006)).

Defendants respond that class treatment is "no less problematic today than a few months ago." Opp'n at 10. Defendants argue that plaintiff's claims are individual in nature because they involve purchases at defendant's retail stores, which involve one-on-one communications with a sales representative. Id. at 12. Defendants contend that plaintiff does not allege that she relied on any standardized written material. Id. Defendants further contend that the only way to determine whether a customer selected services at a retail store is through individual evidence. Id. at 17. Moreover, defendants argue that the Perez deposition merely confirms the individual nature of the process and the fact that customers did not sign written authorizations. Id. Defendants further argue that the Court cannot certify a class because defendants chose not to keep a certain type of record, unless the defendant's record-keeping itself violated the law. Id. at 18 (citing Wal-Mart Stores, Inc. Wage & Hour Litig., 2008 WL 413749, at *9 (N.D. Cal. 2008); Vinole v. Countrywide Home Loans, Inc., 246 F.R.D. 637, 642 (S.D. Cal.2007)).

Plaintiff responds that she will not be relying on individualized proof of what was said at the retail stores. Reply at 7. Plaintiff argues that she will rely on "common proof of what did not happen at any of the retail stores . . . to establish that all of the members of the Cramming Classes were crammed . . . because, under the terms of their contracts, none of them authorized Defendants to charge them for mMode and/or EDID." Id. Plaintiff further argues that she has provided evidence of defendants' company-wide practice of charging customers for mMode and/or EDID without contractual authorization. Id. at 8. Moreover, plaintiff contends that any oral authorizations are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

irrelevant because the service contracts contain an integration clause. Id. at 9. Plaintiff argues that defendants had a company-wide policy of not obtaining written authorization before adding the mMode and/or EDID features. Id. at 12-13.

   In its August 22, 2008 order, the Court held

   [P]laintiff has proffered evidence showing that defendants set monthly quotas requiring sales representatives to enroll a certain percentage of customers each month in the mMode/Data Service and/or the ENH Discount INTL Dial service, and that defendants rewarded their sales representatives by paying them a commission.[4]  However, it does not appear that defendants' sales representatives used a standardized script or forms when making sales at retail stores.  Absent this type of uniformity in practice, it is not clear how plaintiff can prove her cramming claims on a class-wide basis.

   Plaintiff further purports to show commonality through the use of anecdotal evidence and statistics.  Specifically, plaintiff has set forth evidence of the AT&T Wireless Executive Response Center's ("WERC") complaint log for the time period of January 2002 through December 2004.  WERC's complaint log documents customer complaints.  The complaint log reveals that customers variously charge that they received services they did not want, and therefore demanded to be credited for past monthly service charges, or that a retail sales representative added features to the customer's account without permission.[5]  The customer complaints, however, do not always state how the unauthorized feature was added to the customer's account, i.e., whether the customer was crammed by a sales representative at a retail store.  Plaintiff also relies on studies conducted by defendants in

---

[4] Defendants claim that they maintain a policy against cramming.  Defendants have not, however, set forth any written evidence of this policy.  Defendants also contend that they discouraged cramming by reversing a sales representative's commission if a subscriber cancelled a feature.  Declaration of Fred Devereux in Supp. of Opp'n ¶ 5.

[5] In response, defendants generally issued the customer a credit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

> 2003 and 2004, which pertained to mMode/Data Service "churners," to argue that sales representatives regularly crammed customers at the retail store level. However, these studies, which relate only to mMode/Data Service, do not, by themselves, support a finding of commonality.
>
> In response to the Court's questions at oral argument as to what evidence pertaining to the purchase of cellular telephones at retail stores would establish a class-wide method of proving cramming, counsel for plaintiff argued that the service contract provides a class-wide method of proof because by its terms it supercedes any oral representations made to class members. The difficulty with this argument is that the service agreement incorporates, but does not specify, the rate plans selected by customers. Thus, there is presently no evidence from which it can be determined on a class-wide basis what services were selected and what services were provided. While such evidence may be available, it has yet to be provided. Accordingly, the Court finds that plaintiff has at this juncture failed to meet her burden to establish a plausible class-wide method to prove cramming.

August 22, 2008 Order at 15-16. The Court concludes that plaintiff's newly proffered evidence, the deposition testimony of Mr. Perez and the lack of any written material documenting the purchase of mMode or EDID, does not alter the Court's earlier conclusions. The simple fact is that one cannot determine what services were crammed without taking the deposition of each class member to determine what services he or she authorized. Plaintiff argued in her initial motion for class certification that defendants did not document the purchase of these features. Plaintiff's newly proffered evidence does not demonstrate that defendants' retail store employees used a standardized script or standardized forms in selling the mMode and EDID features or otherwise demonstrate that it can be "determined on a class-wide basis what services were selected and what services were provided." Id. Furthermore, defendants' failure to keep records of which customers requested mMode or EDID does not support class certification because defendants had no duty to keep such records. See Aguiar, 144 Cal. App. 4th 121, 134 (2006); Wal-Mart Stores, Inc. Wage & Hour Litig., 2008 WL 413749, at *9 (N.D. Cal. 2008) (holding that defendant was not statutorily obligated to keep records and therefore

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 05-8842 CAS (CTx) | Date | February 23, 2009 |
|---|---|---|---|
| Title | HEATHER STERN, ETC. v. CINGULAR WIRELESS CORPORATION; ET AL. | | |

lack of records was an "insurmountable" obstacle to class certification) Therefore, the Court denies plaintiff's renewed motion for class certification.

## V.    CONCLUSION

In accordance with the foregoing, the Court hereby DENIES plaintiff's renewed motion for class certification.

IT IS SO ORDERED.

|  | 00 | : | 09 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |